In re H. J. OTTEN CO., INC., Bankrupt.

MANUFACTURERS AND TRADERS TRUST COMPANY, Plaintiff,

v.

Harold P. BULAN, Trustee in Bankruptcy of H. J. Otten Co., Inc. et al., Defendants.

CIV.-80-655.

United States District Court, W. D. New York.

Jan. 30, 1981.

---

1. There is no indication that Hills' other debts are anything other than such consumer debts.

782

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y. (Garry M. Graber, Buffalo, N. Y., of counsel), for plaintiff.

Goldstein, Navagh, Bulan & Chiari, Buffalo, N. Y. (Stuart D. Markowitz, Buffalo, N. Y., of counsel), for defendants.

## MEMORANDUM and ORDER

JOHN T. ELFVIN, District Judge.

This appeal from the bankruptcy court concerns certain municipal bonds owned by the bankrupt, H. J. Otten Co., Inc. ("Otten"). I affirm the Bankruptcy Judge's conclusion that appellant Manufacturers and Traders Trust Company ("M & T") does not have a perfected security interest in the bonds.

1. Section 106 provides:
"* * * [U]nder any contract * * * made or awarded by any political subdivision, * * * the contractor may, from time to time, withdraw the whole or any portion of the amount retained from payments to the contractor pursuant to the terms of the contract, upon depositing with the fiscal officer of the political subdivision or district therein (1) bonds or notes of the United States of America, or obligations, the payment of which is guaranteed by the United States of America, or (2) bonds or notes of the state of New York, or (3) bonds of any political subdivision in the state of New York, of a market value equal to the amount so withdrawn."

2. Bonds deposited with the County were: Town of Chili, $20,000 at 4%, due October 1,

Otten was a heating and ventilation contractor which entered into construction contracts with the County of Erie and the City of Buffalo December 8, 1972 and January 25, 1974, respectively. Under the terms of the contracts, the County and the City could retain ten percent of the periodic payments due to Otten pending certification that the work had been completed satisfactorily. Pursuant to New York's General Municipal Law § 106,[1] Otten deposited the bonds in question with the County and the City.[2] These deposits permitted Otten to withdraw the amounts retained under the construction contracts and the bonds were to be returned to Otten upon completion of the construction.

Otten executed notes payable to the order of M & T in amounts of $100,000, $200,000 and $50,000 April 25, 1975, May 5, 1975, and May 13, 1975, respectively. The notes were secured pursuant to an agreement entered into January 7, 1975. Such agreement granted to M & T a security interest in Otten's inventory, accounts and the proceeds thereof and was executed after Otten had deposited the bonds with the County and the City. Appropriate filings were made.

Otten filed a voluntary petition in bankruptcy June 24, 1975 at which time a total of $350,000 was still owing on the notes. Upon completion of the construction by a contractor other than Otten, the County and the City released the bonds to Otten's trustee in bankruptcy.[3] The trustee asserts

1975; Town of Vestal, $20,000 at 3.7%, due February 15, 1977; Town of Colonie, $10,000 at 3.9%, due June 1, 1980; Town of Thompson (Central School District # 1), $10,000 at 4.1%, due April 1, 1976; Ballston, Clifton Park (Central School District # 1), $10,000 at 4.1%, due December 1, 1979. Bonds deposited with the City were: City of Yonkers, $25,000 at 6.5%, due September 1, 1975; Town of New Scotland (Central School District # 3), $15,000 at 6.5%, due July 24, 1975.

3. The trustee is still in possession of some of the bonds. It appears that the remainder have been redeemed and that the trustee is holding the proceeds thereof.

that he is entitled to the bonds by virtue of his status as a hypothetical lien creditor as of the date of bankruptcy under section 70(c) of the Bankruptcy Act. M & T claims that it had a perfected security interest when the bankruptcy petition was filed and that its interest is therefore superior to the trustee's under Article 9 of New York's Uniform Commercial Code ("U.C.C.").

The Bankruptcy Judge concluded that the bonds deposited by Otten with the County and the City were neither accounts nor the proceeds thereof. He therefore found that under the agreement, M & T did not have a security interest in the bonds.[4] On this appeal, M & T argues only that the obligations of the County and the City to return the bonds to Otten upon completion of the construction constituted accounts which were subject to a security interest perfected by filing. The trustee contends that the bonds are instruments within the meaning of U.C.C. § 9–304, and that M & T never had a perfected security interest in the bonds.

Thus, this appeal raises the question whether bonds deposited with a municipality under section 106 of the General Municipal Law are "instruments" or an "account" within the meaning of the U.C.C. This appears to be a question of first impression.

The U.C.C. defines an account as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." U.C.C. § 9–106. An instrument includes a "security," as defined in section 8–102. U.C.C. § 9–105(1)(i).[5] The bonds in question clearing meet this definition.[6] M & T nevertheless suggests that Otten's deposit of the bonds with the County and the City rendered the bonds an "account". This contention must be rejected.

The U.C.C. is intended to promote the marketability of securities. Thus, a security interest in an instrument must be perfected by taking possession of the instrument. U.C.C. § 9–304(1). Adherence to M & T's argument that the bonds held by the County and the City were accounts rather than instruments would frustrate the legislative policy that a security interest in instruments may not be perfected by filing.

As M & T points out, it would have had a perfected security interest in Otten's right to receive the payments retained under the construction contracts had Otten not deposited the bonds and withdrawn the funds. However, a distinction between Otten's right to receive payment and Otten's right to the return of the bonds is not a mere elevation of form over substance. Rather, such a distinction is based directly on distinctions made by the U.C.C. between various forms of collateral and the policies lying thereunder.

M & T argues that a debtor such as Otten should not be permitted to alter the nature of a lender's security interest by depositing bonds with a municipality. This argument fails to persuade. Otten had deposited the bonds with the County and the City before the security agreement was executed. M & T could easily have inquired whether Otten had done so and could have sought other, additional collateral. Moreover, a lender might, by contract with a borrower, require the borrower to seek the lender's approval before depositing or withdrawing bonds from deposit with a municipality. The

---

**4.** The Bankruptcy Judge also concluded, as an alternative holding, that even if the bonds were proceeds of an account, M & T's security interest was not continuously perfected under U.C.C. § 9–306(3).

**5.** Section 8–102(1)(a) defines a security as follows:

"A 'security' is an instrument which
(i) is issued in bearer or registered form; and
(ii) is of a type commonly dealt in upon securities exchanges or markets or commonly

recognized in any area in which it is issued or dealt in as a medium for investment; and
(iii) is either one of a class or series or by its terms is divisible with a class or series of investments; and
(iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer."

**6.** Under Local Finance Law § 161.00, municipal bonds must be "negotiable instruments within the meaning of article eight of the uniform commercial code * * *."

lender and borrower might agree that if bonds are deposited and retained payments are withdrawn by the borrower, such payments shall be immediately paid over to the lender. In sum, the potential abuses foreseen by M & T may be adequately dealt with by contract between the lender and the borrower.

Therefore, I hold that the bonds held by the County and the City were instruments, rather than accounts, under the U.C.C. Inasmuch as the security agreement covered only inventory, accounts, and the proceeds thereof, M & T did not have a security interest in the bonds. The order of the Bankruptcy Judge dated July 18, 1980, is hereby ORDERED affirmed.